IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DANEECE BERGE, §
§
　　　　Plaintiff, §
§ Civil Action No. 3:17-CV-1367-D
VS. §
§
REPUBLIC NATIONAL INC., et al., §
§
　　　　Defendants. §

MEMORANDUM OPINION
AND ORDER

In this lawsuit by plaintiff Daneece Berge ("Berge") alleging claims for breach of contract, misappropriation of trade secrets, theft liability under the Texas Theft Liability Act ("TTLA"), Tex. Penal Code Ann. § 31.03, fraud, and fraudulent inducement, defendants Republic National Inc. ("Republic"), Mike Solitro ("Mike"), and Joseph Solitro ("Joseph") move for summary judgment. Defendants also move to strike Berge's summary judgement response, or, in the alternative, object and move to strike Berge's summary judgment evidence. For the reasons that follow, the court grants defendants' motion for summary judgment, denies defendants' motion to strike as moot, and dismisses this action with prejudice by judgment filed today.

I

This lawsuit arises out of Berge's decision to leave her job and work for a competing company. Berge was employed as First Vice President, Operations Manager of Specialized Commercial Services for Old Republic National Title Insurance Company ("Old Republic").

She managed title insurance, land surveys, environmental studies, zoning reports, and property condition assessments. During her employment at Old Republic, Berge met Mike, the President of Republic, a land surveying company that was one of Old Republic's preferred vendors. In August 2016 Berge contacted Mike asking about potential employment opportunities. Sometime in October 2016, before Berge left Old Republic, Berge and Republic executed a mutual Non-Disclosure Agreement ("NDA"). The NDA was executed by "Republic National Inc./Mike Solitro" and included an additional signatory, Lynette Skorka ("Skorka"), who was Berge's former secretary. Berge later shared a variety of information, including salary information, gross revenue, sales for 2015 and 2016 year to date, house accounts, vendor costs, income before operating expense, net income, and another employee's sales numbers. Mike and Joseph offered Berge a position, which she initially declined but later accepted after negotiation.

On February 15, 2017 Berge resigned from Old Republic. On March 13, 2017 Berge began working for Republic as the President of the Republic National Due Diligence Service. Berge provided a preliminary and then final customer list, and Skorka provided the vendor list to defendants. Both lists originated during Berge's and Skorka's time at Old Republic. These lists represented 900 clients and 2,500 vendors. Berge also provided proprietary procedures and information that belonged solely to Berge.

Twenty five days after Berge began working at Republic, defendants terminated her employment because they could no longer afford keep her as an employee. As of the time of this lawsuit, Skorka remains employed by Republic.

Berge was unemployed for seven months, until she accepted a job at Fidelity National Title Insurance, which paid a lower salary than what Berge made at Old Republic. Berge brought this lawsuit against defendants Republic, Mike, and Joseph for breach of contract based on defendants' use of, and failure to return, Berge's proprietary information, misappropriation of trade secrets, theft liability, fraud, and fraudulent inducement. Defendants now move for summary judgment dismissing all of Berge's claims and move to strike Berge's response to summary judgment, or, in the alternative, object and move to strike Berge's summary judgment evidence. Berge opposes both motions.

II

Defendants move for summary judgment on claims for which Berge will have the burden of proof at trial. Because Berge will have the burden of proof, defendants' burden at the summary judgment stage is to point the court to the absence of evidence of any essential element of Berge's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once they does so, Berge must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Berge's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Berge's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where Berge fails to meet this burden. *Little*, 37 F.3d at 1077.

III

The court first addresses Berge's misappropriation of trade secrets claim.

A

To establish a trade secret misappropriation claim under Texas law, Berge must demonstrate (1) the existence of a trade secret, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, (3) use of the trade secret without authorization from the plaintiff, and (4) damages. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991), *aff'd*, 505 U.S. 763 (1992); *H.E. Butt Grocery Co. v. Moody's Quality Meats, Inc.*, 951 S.W.2d 33, 34 (Tex. App. 1997, writ denied). Because Berge cannot establish the use of a trade secret, the court need not address the other elements.

A trade secret is defined as any formula, pattern, device, or compilation of information used in a business, that gives the owner an opportunity to obtain an advantage over competitors who do not know or use it. *Phillips v. Frey*, 20 F.3d 623, 628 (5th Cir. 1994); *Taco Cabana*, 932 F.2d at 1123. "It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers." *Chandler v. Mastercraft Dental Corp. of Tex. Inc.*, 739 S.W.2d 460, 468 (Tex. App. 1987, writ denied). It is a process or device for continuous use in the operation of a business. *Id.* Generally, a trade secret relates to the production of goods. *Id.* To be protected, a trade secret must give the owner a competitive advantage. *Phillips*, 20 F.3d at 628. It "must possess at least that modicum of originality which will separate it from

everyday knowledge." *Id.* (quoting *Cataphote Corp. v. Hudson*, 444 F.2d 1313, 1315 (5th Cir. 1971)).

Texas law requires that a trade secret be a "secret." *Zoecon Indus. v. American Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983). The purported trade secret can neither be generally known by others in the same business nor readily ascertainable by an independent investigation. *Id.* A process or device may be a trade secret, however, even when others can gain knowledge of the process from studying the manufacturer's marketed product. *Phillips*, 20 F.3d at 629.

> [T]he mere fact that such lawful acquisition is available does not mean that [the one accused of trade secret misappropriation] may, through a breach of confidence, gain the information in usable form and escape the efforts of inspection and analysis. The fact that a trade secret is of such a nature that it can be discovered by experimentation or other fair and lawful means does not deprive its owner of the right to protection from those who would secure possession of it by unfair means.

*K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 314 S.W.2d 782, 788 (Tex. 1958) (internal quotations omitted); *see Phillips*, 20 F.3d at 629 (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974) (stating that trade secret law does not offer protection against discovery by fair and honest means such as independent invention, accidental disclosure, or reverse engineering; however, protection will be awarded to trade secret holder against disclosure or unauthorized use by those to whom secret has been confided, either under express or implied restriction of non-disclosure or by one who has gained knowledge by improper means)). Trade secret protection is based on a policy of protecting business

from breaches of faith and reprehensible means of learning another's secret. *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503 (5th Cir. 1982).

B

Defendants maintain that Berge has no evidence that they actually used confidential information without her consent. Berge responds by pointing to her own affidavit and Mike's deposition, in which he states that Skorka may have called customers and vendors on Berge's list to solicit business.

A claim of misappropriation requires "disclosure or use of a trade secret of another without express or implied consent by [Berge]." Tex. Civ. Prac. & Rem. Code Ann. § 134A.002 (West 2018). "'Use' of a trade secret means commercial use, by which a person seeks to profit from the use of the secret." *Merritt Hawkins & Assocs., LLC v. Gresham*, 79 F.Supp.3d 625, 638 (N.D. Tex. 2015) (Solis, C.J.) (citing *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir. 2007)) (quotation omitted), *aff'd sub nom. Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143 (5th Cir. 2017). "As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" *Id.*

Berge first cites her own conclusory declaration averment that "defendants used [her] trade secrets when they continued to use [her] authored material after [her] departure." P. App. 6. This evidence is insufficient to carry Berge's burden at the summary judgment stage. *See Stagliano v. Cincinnati Ins. Co.*, 633 Fed. Appx. 217, 219 (5th Cir. 2017) (per curiam) ("[W]e think that a single conclusory . . . affidavit, devoid of any factual support . . . was

insufficient to meet Plaintiff's burden of designating specific facts showing that there is a genuine issue for trial.") (internal brackets and quotation marks omitted); *see also Orthopedic & Sports Injury Clinic v. Wang Lab. Inc.*, 922 F.2d 220, 224 (5th Cir. 1991) ("[T]here is a level of conclusoriness below which an affidavit must not sink if it is to provide the basis for a genuine issue of material fact.").

Other than this single statement in her declaration, Berge offers no additional evidence aside from part of Mike's deposition testimony in which he states, "[Skorka] works for me. She *may have* contacted or had knowledge of people that would be on her list, which was [Berge]'s list." P. App. 119 (emphasis added). The speculative nature of the statement, combined with the possibility that Mike is referring to Skorka's use of the list with Berge's permission, while Berge still worked at Republic, prevents the statement from creating an genuine dispute of material fact. Indeed, Mike states that he does not know if Skorka ever actually called anyone on the list. *Id.* at 120. And Berge points to no evidence that Republic used her list without her permission to contact particular clients with whom Republic did not have a prior relationship. Nor does she offer evidence that defendants used any of the other allegedly proprietary information she provided.

The court thus holds that Berge has not designated specific facts that would enable a reasonable jury to find in her favor on her claim for misappropriation of trade secrets.[1]

---

[1]Defendants maintain the customers list is not a legally protectable trade secret because the content of the list is readily ascertainable. Defendants also posit that Berge cannot establish that defendants acquired the documents through breach of a confidential relationship or discovery by improper means. Defendants also contend that Berge did not

IV

The court turns next to Berge's breach of contract claim.

A

In Texas, a breach of contract claim requires proof of four elements: "(1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendants' breach of contract, and (4) damages to the plaintiff resulting from the breach." *Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 n.2 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003)); *see also Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 353 (Tex. App. 2002, pet. denied).

B

The NDA states:

> The parties hereto wish to explore or pursue a possible business relationship (the "Relationship") in connection with which one Party or its agents may disclose Confidential Information. This Agreement sets forth the terms under which Confidential Information disclosed by one Party ("Discloser") to the other Party ("Recipient") is to be treated.

NDA ¶ 1. The NDA defines "confidential information" as

> all information disclosed by the Discloser, whether disclosed [in] writing, orally or otherwise, hereunder that should reasonably be understood by Recipient, because of legends or other markings, the circumstances of disclosure or the nature of the information itself; to be confidential and proprietary to the

---

sustain an injury for which she can recover damages. Because the court is dismissing the claim on the basis of lack of evidence that defendants used Berge's allegedly confidential information, it does not address these arguments.

> Discloser, an affiliate of the Discloser or a third party. The Parties agree that Confidential Information includes information relating to the Discloser's business, including without limitation, business plans, proposals, forecasts, financial data, customer and prospect lists and information, agreements with third parties, personnel data, contract information, properties, methods of operations, software (including, test versions, design documents and documentation), trade secrets, branding, marketing, advertising and public relations campaign plans, inventions, discoveries, know-how and other intellectual property.

*Id*. ¶ 2. The use of confidential information, as defined in the NDA, is permitted only for achieving the purpose of the NDA. *Id.*

The NDA provides:

> All such information in tangible form shall be returned to Discloser or destroyed promptly upon the termination or expiration of this Agreement or at any time upon Discloser's written request, and shall not thereafter be retained in any form by Recipient or its affiliates, or by any employees or independent contractors of Recipient or its affiliates.

*Id.* ¶ 4.

Defendants maintain that Berge cannot show that they breached the contract because Berge has no proof that defendants actually used the allegedly confidential information. Berge responds that Skorka, on behalf of the defendants, used the confidential materials to contact customers after Berge's departure. Berge also contends that defendants breached the contract by failing to return confidential documents when Berge's employment was terminated.

Berge alleges that she provided her proprietary customer and vendor lists along with other proprietary information, processes, procedures and documents. Compl. ¶ 10-11. Berge

points to her conclusory statement that "Skorka continued to request quotes from vendors on our provided list after my departure." P. App. 8. Berge also maintains that certain requests for quotes based on her list turned into orders the day she was terminated. She fails, however, to point to any evidence that such orders arose from Republic's use of the list without her permission. For the same reasons explained *supra* in § III(B), the court concludes that Berge has not presented evidence that would enable a reasonable jury to infer that defendants used the allegedly confidential information after Berge's departure from Republic. Nor has Berge presented evidence, aside from her on conclusory statement, that defendants retained any of the confidential materials. This statement is insufficient to create a genuine fact issue.

The court holds that Berge has not designated specific facts that would enable a reasonable jury to find that defendants breached the NDA.

C

Defendants also posit that Berge cannot show that she suffered damages resulting from the breach. They maintain that Berge still has the customer lists, is not prevented from using them, and rejected certain jobs where she could have used them. Berge does not address this particular argument. Although Berge's failure to respond does not permit the court to enter a "default" summary judgment on this claim, *see, e.g., Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v.*

*Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Rule 56(e)(2), (3).

Because a reasonable jury could not find in favor of Berge on the issue of whether defendants breached the NDA or whether damages resulted from the breach, the court grants defendants' motion for summary judgment and dismisses Berge's breach of contract claim.[2]

V

The court turns next to Berge's theft liability claim under the TTLA, Tex. Penal Code Ann. § 31.03.

A

Berge alleges that "[d]efendants unlawfully appropriated, secured, or stole [p]laintiff's property in violation of Tex. Pen. Code §31.03." Compl. ¶ 40. Defendants maintain that Berge has not shown evidence that they intentionally deprived her of money or property or

---

[2]Defendants advance several additional arguments. They maintain that Berge cannot show that they breached the contract because Joseph and Mike were not parties to the NDA. And they also contend that Berge cannot show that Republic breached the contract because the confidential information did not belong to Berge and because the information does not meet the definition of "confidential information" in the NDA.

that she has suffered damages. Defendants also point to a lack of evidence that they deprived or intended to deprive Berge of property. Berge responds that the contacts and vendors list is valuable because of the time required to create it. She also posits that defendants contacted clients and vendors from the list.

B

Section 134.002(2) defines "theft" as "unlawfully appropriating property or unlawfully obtaining services," as described, among other sections, by § 31.03 of the Texas Penal Code. Section 31.03(a) states that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." Section 31.03(b)(1) provides that "appropriation of property is unlawful if . . . it is without the owner's effective consent." "Deprive" means, *inter alia*, "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." Tex. Penal Code Ann. § 31.01 (West 2018).

A reasonable jury could not find, based on the summary judgment record, that defendants unlawfully appropriated Berge's property. The summary judgment evidence indicates that Berge still possesses a copy of the list. In response to defendants' motion, Berge has not adduced evidence that would enable a reasonable jury to find that defendants withheld the list from Berge in such a way that she lost a major portion of its value. Berge's conclusory statements that the list is valuable fail to create an issue of material fact regarding whether defendants' conduct denied her a portion of the value of the list. Accordingly, defendants are entitled to summary judgment dismissing Berge's theft liability claim under

the TTLA.

VI

The court now addresses Berge's claims for fraud and fraudulent inducement.

A

To recover against defendants for fraud under Texas law, Berge must establish that they (1) made a material representation; (2) it was false when made; (3) defendants knew the representation was false, or they made it recklessly without knowledge of its truth and as a positive assertion; (4) defendants made the representation with the intent that Berge should act upon it; and (5) Berge acted in reliance upon it and suffered injury as a result. *Hoffman v. L & M Arts*, 2013 WL 4511473, at *1 (N.D. Tex. Aug. 26, 2013) (Fitzwater, C.J.) (citing *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993) (applying Texas law)). To state a claim under Texas law for fraudulent inducement, a plaintiff must allege all of the elements of fraud as well as "an underlying contract which was induced." *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2011)).

B

Defendants contend that Berge cannot show that the purported representations about her job offer and subsequent employment were knowingly false at the time they were made. Berge does not address this particular argument.

For the same reasons stated *supra* in § IV(C), Berge's failure to respond means that she has not designated specific facts that would enable a reasonable jury to find in her favor

- 13 -

on her fraud and fraudulent inducement claims. The court grants defendants' motion for summary judgment and dismisses these claims with prejudice.[3]

* * *

For the reasons stated, the court grants defendants' motion for summary judgment and dismisses this action with prejudice by judgment filed today.[4]

**SO ORDERED**.

May 17, 2018.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[3]The court does not address defendants' additional arguments that Berge has no evidence of damages and that her fraudulent inducement claim fails as a matter of law because she is an at-will employee.

[4]Because the court is granting defendants motion for summary judgment on all of Berge's claims, it does not reach defendants' motion to strike Berge's response to summary judgment, or, in the alternative, objections and motion to strike Berge's summary judgment evidence, and it denies the motion and objections as moot.